UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRUSTEES of the LOCAL 138, 138A &
138B INTERNATIONAL UNION OF
OPERATING ENGINEERS WELFARE
FUND, ANNUITY FUND, LEGAL FUND,
VACATION FUND, APPRENTICESHIP
TRAINING FUND and TRUSTEES of the
CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS,

**REPORT AND RECOMMENDATION**
19 CV 3106 (RJD) (CLP)

Plaintiffs,

-against-

INTERCOUNTY PAVING ASSOCIATES
LLC,

Defendant.
-----------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

On May 24, 2019, plaintiffs, Trustees of the Local 138, 138A & 138B International Union of Operating Engineers Welfare Fund, Annuity Fund, Legal Fund, Vacation Fund, Apprenticeship Training Fund (the "Local 138 Funds"), and Trustees of the Central Pension Fund of the International Union of Operating Engineers (together, "Trustees" or "plaintiffs") commenced this action against Intercounty Paving Associates LLC ("Intercounty" or "defendant"), under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3), 1145; and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, seeking to collect

1

delinquent employer contributions owed to the Funds.  (Compl.[1] ¶ 1).  On June 25, 2019, defendant Intercounty filed an answer in response to the Complaint.  (ECF No. 7).

On March 2, 2020, the parties agreed to stipulate to liability on the part of the defendant (the "Stipulation").  (ECF No. 18).  The Stipulation provided in relevant part that: "Intercounty acknowledges that as part of its obligations to the Fund and Local 138, it is obligated to permit periodic audits of its books and records and to pay whatever unpaid contributions are found to be due and owing, as well as liquidated damages, interest, attorney's fees and cost."  (Id.)  The Stipulation further provided that: "Intercounty acknowledges that it has failed to meet its obligations to the Fund as alleged in the Complaint."  (Id.)

Thereafter, during a conference with this Court held on March 31, 2020, the parties agreed to have the issue of damages determined on paper submissions.  (ECF Minute Entry, dated 4/1/2020).  On April 17, 2020, the Trustees submitted their motion for damages.  (ECF No. 21).  In a response dated July 15, 2020, defendant indicated that it was not opposing plaintiffs' damages request.  (ECF No. 22).  Plaintiffs then submitted a revised declaration of damages dated July 20, 2020.  (ECF No. 24).

Having reviewed plaintiffs' revised request for damages and considering that defendant has no objection to the calculations, this Court respectfully recommends that plaintiffs be awarded damages as set forth below.

---

[1] Citations to "Compl." refer to the Complaint filed on May 24, 2019, ECF No. 1.

2

FACTUAL BACKGROUND

The Trustees of the Local 138, 138A & 138B International Union of Operating Engineers Welfare Fund, Annuity Fund, Legal Fund, Vacation Fund, Apprenticeship Training Fund, and Trustees of the Central Pension Fund of the International Union of Operating Engineers are employer and employee trustees of multi-employer labor-management trust funds organized and operated in accordance with Section 302 of the LMRA. (Compl. ¶ 4). The Funds are "employee benefit plans," as defined in Section 3(1) of ERISA, and fiduciaries established pursuant to an Agreement and Declaration of Trust. (Id. ¶¶ 4-6). The Funds have their principal place of business at 137 Gazza Boulevard, Farmingdale, New York 11735. (Id. ¶ 4).

Defendant Intercounty is a New York corporation, with its principal place of business located in New York. (Id. ¶ 8). Intercounty is an "employer" within the meaning of ERISA and, during all relevant times, was bound by certain Collective Bargaining Agreements ("CBAs") to pay monthly benefit contributions to the Funds for every hour of covered work on behalf of certain employees within the trade and geographical jurisdiction of the Union. (Id. ¶¶ 9, 10, 12).

Under the CBAs, Intercounty is required to submit periodic reports to the Funds, detailing the number of hours of covered work performed, and, when requested, furnish its books and records to the Funds for audit purposes. (Id. ¶ 12). Plaintiffs allege that an audit of the defendant's books and records was conducted for the periods January 1, 2016 through May 31, 2016, June 1, 2016 through December 31, 2016, January 1, 2017 through May 31, 2017, June 1, 2017 through December 31, 2017, and January 1, 2018 through March 31, 2018. (Id. ¶ 20). The audit determined that defendant owed contributions to the Funds for the period June 1, 2016 through December 31, 2016 in the amount of $17,451.28; for the period January 1, 2017 through

3

May 31, 2017 in the amount of $544.88; for the period June 1, 2017 through December 31, 2017 in the amount of $4,554.90; and for the period January 1, 2018 through March 31, 2018 in the amount of $5,564.89.  (Id. ¶ 21).  Plaintiffs further allege that it was determined that there was a credit taken for the period January 1, 2016 through May 31, 2016 in the amount of $4,469.50.  (Id.)  These unpaid contributions equal $23,646.45.  (Id. ¶ 25)

Plaintiffs allege that they provided defendant with a copy of the audit report on May 16, 2019, but the defendant did not respond.  (Id.)  Thus, in the First Cause of Action, plaintiffs seek an award of damages representing delinquent contributions in the total amount of $23,646.45, plus interest, liquidated damages, auditors' fees, attorneys' fees and costs.  (Id. ¶ 22).  The Second Cause of Action alleges that defendant filed remittance reports for the period October 1, 2018 through February 24, 2019, but did not remit the contributions owed, which total $564,665.26.  (Id. ¶ 27).  Plaintiffs also assert that defendant failed to file reports for the period February 25, 2019 until the date of the Complaint.  (Id.)  Thus, in the Second Cause of Action, plaintiff seeks an award of delinquent contributions in the amount of $564,665.26, plus contributions owed for the period February 25, 2019 until May 24, 2019, the date the Complaint was filed, along with interest, liquidated damages, and any attorneys' fees required to collect the contributions.  (Id. ¶¶ 27-32).

## DISCUSSION

A.  <u>Damages Available Under ERISA</u>

The benefit plans operated by plaintiffs fall under the purview of ERISA in that the Funds are run by an organization of employees with the goal of providing health and retirement benefits to members of the employee organization, in accordance with 29 U.S.C. § 1002.  ERISA

specifies the types of damages to be awarded when judgments are entered in favor of benefit plans. See 29 U.S.C. § 1132(g)(2). These include the following:

1. the unpaid contributions,
2. interest on the unpaid contributions,
3. an amount equal to the greater of--
    i. interest on the unpaid contributions, or
    ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
4. reasonable attorney's fees and costs of the action, to be paid by the defendant, and
5. such other legal or equitable relief as the court deems appropriate.

Id. Plaintiffs have also alleged a claim under 29 U.S.C. § 1145, which states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.

Pursuant to Section 515 of ERISA, Intercounty was required to make contributions to the Funds in accordance with the terms of the CBAs. See 29 U.S.C. § 1145. Based on a review of the allegations in the Complaint, which defendant has conceded as to liability, and the supporting documentation submitted in connection with this inquest, including the terms of the CBA, plaintiffs have sufficiently alleged a claim that the defendant breached its statutory and contractual obligations under both ERISA and the CBA. See 29 U.S.C. § 1132(g)(2).

The plaintiffs still have the burden of proving damages, either by an evidentiary hearing or, should the defendant fail to appear, exhibits submitted by the plaintiffs. See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); see also Levesque v. Kelly Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993); Fustok v. ContiCommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988).  Here, the parties have stipulated to have the question of damages be determined on papers.  By Order dated April 1, 2020, the Court directed the parties to submit papers on the question of damages.  Defendant submitted a letter indicating that it did not contest the amount of damages requested by plaintiffs.

Accordingly, the Court has reviewed plaintiffs' submissions in support of its request for damages.

B. Delinquent Contributions

Plaintiffs seek an award of delinquent contributions.  In support of this request, plaintiffs submitted the Affidavit of William K. Duffy Jr., the Administrator of the Local 138 Funds, who states that he is fully familiar with the facts and circumstances underlying this action, as well as the records and documents maintained in the Funds' files.  (Duffy Aff.[2] ¶ 1).  According to Mr. Duffy's Affidavit, Intercounty submitted remittance reports for hours worked during the period October 1, 2018 through February 24, 2019 in an amount no less than $564,665.26.  (Id. ¶ 5). Since Intercounty has already paid $100,000 toward this delinquency, Mr. Duffy calculates that the amount owed for this period amounts to $464,665.26.  (Id. ¶ 6).

In addition, Mr. Duffy reiterates the allegations in the Complaint relating to the payroll audit conducted of the periods January 1, 2016 through May 31, 2016, June 1, 2016 through December 31, 2016, January 1, 2017 through May 31, 2017, June 1, 2017 through December 31,

---

[2] Citations to "Duffy Aff." refer to the Affidavit of William K. Duffy Jr. in Support of Plaintiffs' Motion for Damages, dated April 13, 2020, ECF No. 21-2.

2017, and January 1, 2018 through March 31, 2018.  (Id. ¶¶ 7-8, Ex. C[3]).  Based on this audit, the Funds assessed a delinquency against the defendant in the total amount of $23,646.45.[4]  (Id. ¶ 9).  Based on a review of the Duffy Affidavit and supporting documentation, it is respectfully recommended that plaintiffs be awarded an additional amount in delinquent contributions in the amount of $23,646.45.

When added together, the amount of delinquent contributions originally owed was $488,311.71, after deducting the $100,000 credit and then including the $23,646.45.  However, on July 20, 2020, Michael Bauman, Esq., counsel for plaintiffs, submitted a Declaration in Support of Plaintiffs' Request for Damages, in which he indicated that in addition to the $100,000 paid by defendant toward the delinquency, plaintiffs have since collected $30,322.55 from various bond companies. (Bauman Supp. Decl.[5] ¶ 5).  This leaves the balance owed on the delinquency due for the period October 1, 2018 through February 24, 2019 at $434,342.71.  Together with the $23,646.45 owed from the audit, defendant now owes a total of $457,989.16 in delinquent contributions.  Accordingly, it is respectfully recommended that plaintiffs be awarded $457,989.16.

In addition, plaintiffs allege that defendant failed to file reports or pay benefits from the period of February 25, 2019 through the present.  Although plaintiffs allege delinquent contributions are owed for this period, plaintiffs have not provided the Court with a calculation for this period.  It is respectfully recommended that if plaintiffs wish to pursue damages for this

---

[3] Citations to Duffy Aff., Ex. C refer to the audit report performed by the Funds' auditor.
[4] For a period by period breakdown of this total, see discussion supra at 3-4.  (See also Duffy Aff. ¶ 9; Compl. ¶ 21).
[5] Citations to "Bauman Supp. Decl." refer to the July 20, 2020 Declaration of Michael Bauman, Esq. in Support of Plaintiffs' Request for Damages.

time period, plaintiffs be given an opportunity to supplement their motion with declarations or affidavits relating to any additional delinquent contributions that they claim are owed from February 2019 to present.

C. Interest and Liquidated Damages

Under Article 2, Section 6 of the CBA, if an employer is delinquent in remitting contributions to the Funds, the employer is liable to the Funds for interest on the amount of the unpaid contributions calculated at the prime rate. (Duffy Aff. ¶ 12). According to the Duffy Affidavit, the current federal prime rate is 3.25%. (Id. ¶ 13 (citing http://www.bankrate.com/rates/interest-rates/wall-street-prime-rate.aspx)). Plaintiffs contend that defendant owes interest to the Funds on the unpaid contributions through the date of judgment. (Id.) Since plaintiffs have not supplied any calculations as to the amount of interest being claimed, nor have they suggested a method by which to calculate that interest, the Court respectfully recommends that their request for interest be denied at this time, without prejudice to the submission of supplemental papers calculating the interest owed for the entire period, including for any additional delinquent contributions that they may seek starting on February 25, 2019. Plaintiff should include a table of calculations to allow the Court to confirm its findings.[6]

In addition, ERISA and the Trust Agreements provide that the Funds are entitled to liquidated damages calculated as either the unpaid interest owed on the delinquent contributions or twenty percent (20%) of the unpaid contributions, whichever is greater. (Id. ¶ 14). Here, 20%

---

[6] Since the Court is recommending denial of plaintiffs' request for attorneys' fees due to the lack of detailed time records and giving plaintiffs an opportunity to supplement their papers in that regard, the Court is also recommending that plaintiffs be directed to provide interest calculations at the same time. (See discussion infra at 9-15).

8

of $457,989.16 equals $91,597.83. However, because the Court does not have plaintiffs' calculations for the period after February 24, 2019, nor does the Court have plaintiffs' interest calculations, the Court cannot determine whether plaintiffs are entitled to an award of liquidated damages calculated at the rate of 20% of the unpaid contributions or based on the interest owed. Accordingly, the Court respectfully recommends that plaintiffs' request for liquidated damages be denied without prejudice and that plaintiffs be allowed to include a calculation of liquidated damages in any supplemental submissions.

D. Attorneys' Fees and Costs

Pursuant to 29 U.S.C. § 1132(g)(2)(D) and the CBA, plaintiffs seek to collect attorneys' fees and costs. (Bauman Decl.[7] ¶ 9). With respect to attorneys' fees, ERISA provides that when an employee benefit fund prevails in a legal action, the defendant is liable for legal costs. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs request an award of legal fees and costs. (Id.)

"The district court retains discretion to determine . . . what constitutes a reasonable fee." Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (quoting LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)). "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee." Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350, at *5 (S.D.N.Y. Mar. 1, 2012) (citing Perdue v. Kenny A., 559 U.S. 542, 551-52 (2010)), report and recommendation adopted, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012); see also Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the

---

[7] Citations to "Bauman Decl." refer to the Declaration of Michael Bauman, dated April 17, 2020, filed in support of plaintiff's motion for damages, ECF No. 21-1.

lodestar "as a starting point"); Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 188-90 (2d Cir. 2008).

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." Moore v. Diversified Collection Servs., Inc., No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. Mar. 19, 2013) (internal citations and quotation marks omitted), report and recommendation adopted, 2013 WL 1622713 (E.D.N.Y. Apr. 15, 2013); see also Adusumelli v. Steiner, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. Mar. 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonably expended by a reasonable hourly rate") (citing Millea v. Metro-North R.R., Co., 658 F.3d at 166); Dunn v. Advanced Credit Recovery, Inc., 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" Millea v. Metro-North R.R. Co., 658 F.3d at 166-67 (quoting Perdue v. Kenny A., 559 U.S. at 553). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" Id. at 167 (quoting Perdue v. Kenny A., 559 U.S. at 554); see also Adusumelli v. Steiner, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." Millea v. Metro-North R.R. Co., 658 F.3d at 167. As the court explained in Dunn v. Advanced Credit Recovery, Inc., a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if

10

necessary, adjust[] the resulting figure using the [Johnson v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[8]  2012 WL 676350, at *5, n. 8.

The burden is on the party moving for attorneys' fees to justify the hourly rates sought. See Hensley v. Eckerhart, 461 U.S. at 437.  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (noting that "'[a] district court's choice of rates [is] well within [its] discretion'") (alteration in original) (quoting Cabrera v. Jakobovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994) (internal quotation marks omitted)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 866, 896 n.11 (1984).

The Second Circuit has held that in calculating the presumptively reasonable fee, "courts

---

[8] The Johnson factors are as follows:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

'should generally use the hourly rates employed in the district in which the reviewing court sits . . .'" Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted) (holding that when awarding attorneys' fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located). Indeed, as the court in Simmons noted, in determining the "presumptively reasonable fee," courts should consider what a reasonable client would be willing to pay, keeping in mind that "a reasonable, paying client . . . wishes to spend the minimum necessary to litigate the case effectively." Id. (citations and internal quotation marks omitted); see also Cook v. First Revenue Assurance, LLC, No. 10 CV 5721, 2012 WL 272894, at *3 (E.D.N.Y. Jan. 9, 2012), report and recommendation adopted, 2012 WL 272891 (E.D.N.Y. Jan. 30, 2012). In awarding attorneys' fees in the present case, the Court is guided principally by the fact that default actions are relatively simple legal matters, taking into account as well the attorneys' degree of skill and the Court's own experience dealing with similar claims.

Plaintiffs' counsel from Pitta LLP ("the Firm") seeks fees calculated at the hourly rates of $400 for partners, $375 for counsel, and $225 for associates. (Bauman Decl. ¶ 12). The Firm also seeks fees of $160 per hour for paralegals. (Id.) Mr. Bauman, lead counsel for the Firm, avers that he received his J.D. in 1990 and has 29 years practicing in the areas of labor, employment and employee benefits law, and his regular billing rate is $400 per hour. The rates proposed for the attorneys at the Firm seem to be reasonable and in line with rates awarded in this district in similar cases. See, e.g., Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO by Callahan v. Intercounty Paving Assocs. of New York, LLC, No. 19 CV 733, 2020 WL 6826197,

12

at *8 (E.D.N.Y. Nov. 20, 2020) (finding $390 per hour reasonable for a partner practicing labor law since 1995); Gesualdi v. D. Gangi Contracting Corp., No. 18 CV 3773, 2019 WL 1130729, at *8 (E.D.N.Y. Feb. 11, 2019) (reducing rate from $450 an hour for the partner attorneys to $400 an hour); LaBarbera v. Ovan Constr., Inc., No. 06 CV 2867, 2011 WL 5822629 at *5 (E.D.N.Y. Sept. 20, 2011) (approving rates of $390 per hour for work by partner in ERISA litigation, including summary judgment motion), report and recommendation adopted, 2011 WL 5825785 (E.D.N.Y. Nov. 16, 2011); Gesualdi v. MBM Indus., Inc., No. 10 CV 2607, 2010 WL 372348, at *2 (E.D.N.Y. Sept. 15, 2010) (finding a partner's rate of $390 per hour and associate's rate of $280 per hour reasonable in ERISA litigation).

However, the rate of $160 an hour for paralegal time appears higher than what is typically approved by courts in this district. Courts in this district generally award between $80-100 an hour for paralegal work (see Matter of Arbitration Between Finkel & Potenza Elec. Corp., No. 19 CV 486, 2019 WL 7580103, at *4 (E.D.N.Y. Nov. 26, 2019) (collecting cases)); however, some have granted up to $120 an hour for paralegal time. See, e.g., Finkel v. Firequench, Inc., No. 20 CV 0010, 2020 WL 1323017, at *2 (E.D.N.Y. Mar. 20, 2020) (granting $120 an hour for paralegal worked and noting that "[t]hese rates are firmly within the range of approved rates for ERISA collection work in this district"). As such, the Court recommends granting the rate of $100 an hour for paralegal time here.

More importantly, however, this Court cannot recommend an award of fees or pass upon the reasonableness of the rates charged without reviewing the time spent on the various services rendered in connection with this matter. The Firm has not submitted the detailed contemporaneous billing records, as required by New York State Association for Retarded

13

Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), which the Court requires to recommend a fee award. Accordingly, the Court respectfully recommends that plaintiffs' request for an award of attorneys' fees be denied at this time, without prejudice to plaintiffs submitting contemporaneous billing records.

Plaintiffs are also entitled to reimbursement for costs incurred in connection with the collection of delinquent contributions. See ERISA § 502(g), 29 U.S.C. § 1132(g); Trustees of Empire State Carpenters Annuity v. J&B Paint & Contr., LLC, No. 13 CV 35, 2013 U.S. Dist. LEXIS 126337, at *7 (E.D.N.Y. June 12, 2013). Included in these costs are filing fees and other court expenses under 29 U.S.C. § 1132(g)(2)(D) and under the terms of the CBAs. See Finkel v. Triple A Group, Inc., 708 F. Supp. 2d 277, 290 (E.D.N.Y. Sept. 2, 2009) (awarding $818.53 in costs for filing fees, service, postage, and photocopying). Although plaintiffs' Complaint seeks reimbursement for auditors' fees, in their motion for damages, plaintiffs only seek an award of the $400.00 filing fee. (Bauman Decl. ¶ 14(d)). Accordingly, having taken judicial notice of the filing fee in this district, it is respectfully recommended that plaintiffs be awarded $400.00 in costs.

## CONCLUSION

The Court respectfully recommends that plaintiffs be awarded unpaid contributions in the amount of $457,989.16 and $400 in costs. To the extent that plaintiffs seek unpaid contributions from the period February 24, 2019 to the present, the Court recommends that plaintiffs be permitted to supplement their filings with additional calculations. The Court also respectfully recommends that plaintiffs' request for interest, liquidated damages, and attorneys' fees be

denied at this time, without prejudice to their submitting additional supporting paperwork as detailed above.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
February 26, 2021

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York