```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
TRUSTEES of the LOCAL 138, 138A &
138B INTERNATIONAL UNION OF
OPERATING ENGINEERS WELFARE
FUND, ANNUITY FUND, LEGAL FUND,
VACATION FUND, APPRENTICESHIP
TRAINING FUND and TRUSTEES of the
CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS,                                            REPORT AND
                                                                RECOMMENDATION
                                                                19 CV 3106 (RJD) (CLP)
                              Plaintiffs,

            -against-

INTERCOUNTY PAVING ASSOCIATES
LLC,

                              Defendant.
-----------------------------------------------------------X
```

**POLLAK**, Chief United States Magistrate Judge:

On May 24, 2019, plaintiffs, Trustees of the Local 138, 138A & 138B International Union of Operating Engineers Welfare Fund, Annuity Fund, Legal Fund, Vacation Fund, Apprenticeship Training Fund (the "Local 138 Funds"), and Trustees of the Central Pension Fund of the International Union of Operating Engineers (together, "Trustees" or "plaintiffs") commenced this action against Intercounty Paving Associates LLC ("Intercounty" or "defendant"), under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a)(3), 1145, and Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), as amended, 29 U.S.C. § 185, seeking to collect delinquent employer contributions owed to the Funds. (Compl.[1] ¶ 1).

---

[1] Citations to "Compl." refer to the Complaint filed on May 24, 2019, ECF No. 1.

1

On March 2, 2020, the parties agreed to stipulate to defendant's liability (the "Stipulation"). (ECF No. 18). The Trustees then submitted their motion for damages on April 17, 2020, and, on July 15, 2020, defendant indicated that it was not opposing plaintiffs' damages request. (ECF Nos. 21, 22). On July 20, 2020, plaintiffs submitted a revised declaration of damages. (ECF No. 24).

By Order dated March 19, 2021, the Court awarded plaintiffs unpaid contributions in the amount of $457,989.16, plus $400 in costs, for a total of $458,389.16. (ECF No. 27). In addition, the Court instructed plaintiffs to supplement their filing to set out the amount of liquidated damages, interest, and attorney's fees and costs owed by defendant. (Id.)

On October 12, 2021, plaintiffs moved for an Order requiring defendant to pay liquidated damages, interest on the unpaid contributions, and attorney's fees.[2] (ECF No. 34). For the reasons set forth below, this Court respectfully recommends that plaintiffs be awarded **$145,045.69**, representing **$47,649.86** in interest accrued on the unpaid contributions through the date of this Report and Recommendation, **$91,597.83** in liquidated damages, and **$5,798** in attorney's fees.

## DISCUSSION

A. ERISA Damages

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights under Section 1145, the statute specifies that the damages to be awarded when judgment is entered in favor of the plan include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of – (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of

---

[2] Although plaintiffs claim to seek costs in addition to attorney's fees in their submission, they have failed to request a specific amount of costs or provide any evidence of costs.

2

> 20% (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502, 1505-07 (2d Cir. 1995).

The Court has already entered judgment reflecting defendant's liability for $457,989.16 in unpaid contributions. All that remains to be determined in this case are the amounts of interest on the unpaid contributions, liquidated damages, and attorney's fees that defendant owes plaintiffs.

B. Interest

Under ERISA and the CBA, plaintiffs are entitled to an award of: (1) interest accrued during the period of the delinquency; and (2) interest accrued from the date of the commencement of the action through the date of final judgment. See 29 U.S.C. §§ 1132(a)(9), (g)(2)(B). Under Section 1132(g)(2) of ERISA, the interest rate on unpaid contributions is calculated "using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26." 29 U.S.C. § 1132(g).

Article 2, Section 6 of the Trust Agreement provides for the employer to pay interest if the employer is delinquent in remitting the payment of contributions to the Funds. (Duffy Aff.[3] ¶ 12). The interest rate set forth in the underlying Trust Agreement is specified as the "prime rate." (Bauman Decl.[4] ¶ 16). The prime rate is the rate at which banks lend money to their most

---

[3] Citations to "Duffy Aff." refer to the Affidavit of William K. Duffy, Jr. in Support of Plaintiffs' Motion for Damages, dated April 13, 2020, ECF No. 21-2.
[4] Citations to "Bauman Decl." refer to the Declaration of Michael Bauman, Esq., counsel for plaintiffs, dated October 12, 2021, ECF No. 34.

3

favored clients and is periodically ascertained by surveying banks to determine their lending rates.  Marc Levinson, Guide to Financial Markets: Why They Exist and How They Work 67 (7th ed. 2018).  The prime rate changes infrequently and only incrementally.  Id.

Between April 1, 2019, the date that defendant's contributions became due, and October 12, 2021, when plaintiffs filed the instant motion, the prime rate ranged from a high of 5.5% and a low of 3.25%.  See Historical Prime Rates, JPMorgan Chase & Co., https://www.jpmorganchase.com/about/our-business/historical-prime-rate.  However, plaintiff calculates interest using only the lowest interest rate of 3.25% for this entire period.  (Bauman Decl.[5] ¶ 16).  Since plaintiffs only seek to collect interest using the 3.25% rate for the period between April 1, 2019, and October 12, 2021, the Court finds that it is appropriate to calculate interest using the 3.25% rate for the entire period.  Plaintiffs calculate that defendant owes them $37,680.59[6] in interest for the period from April 1, 2019 through October 12, 2021.  (Id.)  However, the Court calculates that, applying the 3.25% interest rate, $37,680.72 in interest accrued during the relevant period.  Because plaintiffs request the lesser amount of $37,680.59, the Court finds that it is appropriate to award that amount for the period between April 1, 2019 and October 12, 2021.

Since October 12, 2021, the delinquent contributions have continued to accrue additional interest.  Using the prime rate of 3.25% which was in effect from October 12, 2021 until it increased to 3.50% on March 17, 2022, see Historical Prime Rates, JPMorgan Chase & Co., https://www.jpmorganchase.com/about/our-business/historical-prime-rate; see also Wall Street Journal prime rate, Bankrate (May 24, 2022), the daily rate that accrued was $40.78.  Thus,

---

[5] Citations to "Bauman Decl." refer to the Declaration of Michael Bauman, Esq., counsel for plaintiffs, dated October 12, 2021, ECF No. 34.
[6] Even using the 3.25% interest rate, plaintiffs appear to have undervalued the interest owed by 13 cents.  Given that plaintiffs have requested this lower amount, the Court recommends that plaintiffs be awarded a total of $37,680.59.

4

between October 12, 2021 and March 17, 2022, defendant owes an additional $6,361.68 in interest on the delinquent contributions. From March 17, 2022 until May 5, 2022 when the interest rate increased again to 4%, see Historical Prime Rates, JPMorgan Chase & Co., https://www.jpmorganchase.com/about/our-business/historical-prime-rate; see also Wall Street Journal prime rate, Bankrate (May 24, 2022), http://www.bankrate.com/rates/interest-rates/wall-street-prime-rate.aspx, defendant owes an additional $2,152.08 in interest. Using the increased prime rate of 4% and calculating the interest owed from May 5, 2022 through the date of this Report and Recommendation, plaintiffs are owed an additional $1,455.51 in interest, representing an accrual of $50.19 in interest per day.

Having reviewed plaintiffs' calculations and having applied the increased prime interest rates in accordance with the parties' Trust Agreement, it is respectfully recommended that plaintiffs be awarded interest accrued on the delinquent contributions through the date of this Report and Recommendation in the amount of **$47,649.86** and $50.19 per diem thereafter until the judgment is satisfied.

C.  Liquidated Damages

In addition to interest, Section 1132(g) of ERISA authorizes plaintiffs to receive an award of liquidated damages for unpaid and late-paid ERISA Plan Contributions in an amount equal to the larger of either: (1) the interest owed on the unpaid contributions; or (2) an amount specified by the Trust Agreement up to 20% of the unpaid contributions. See 29 U.S.C. § 1132(g)(2)(C) (providing for an award of liquidated damages not to exceed 20% of the unpaid contributions). Based on the Court's own calculations, 20% of the unpaid contributions is $91,597.83, which is significantly more than the interest that has accumulated on the unpaid contributions. (See discussion supra at 3-5).

Accordingly, based on Section 1132(g)(2)(C) of ERISA, the Court respectfully recommends that plaintiffs receive an award for liquidated damages in the total amount of **$91,597.83**, which equals 20% of the unpaid contributions.[7]

D. <u>Attorneys' Fees and Costs</u>

Plaintiffs seek $5,888 in attorneys' fees pursuant to 29 U.S.C. § 1132(g)(2)(D). (See Bauman Decl. ¶ 11, Ex. A). In support of this request, plaintiffs have submitted the Declaration of Michael Bauman, Esq., who has acted as lead counsel in this matter for the firm of Pitta LLP (the "Firm"), which represents plaintiffs in this action. (See Bauman Decl. ¶¶ 7, 9). In accordance with <u>New York State Association for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983), the Firm has submitted contemporaneous billing records, setting forth the dates and amount of time during which services were rendered, the hourly rate at which the services were charged, along with the name of the attorney who performed the services and a description of services performed. (See Bauman Decl., Ex. A).

Courts employ the "lodestar" method in calculating reasonable attorney's fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. See <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 546, 551-52 (2010); <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 183 (2d Cir. 2008); <u>Cowan v. Ernest Codelia, P.C.</u>, No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), <u>aff'd</u>, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. <u>Cowan v. Ernest</u>

---

[7] Plaintiffs calculate 20% of the $457,989.16 in unpaid contributions as $91,677.83. (Bauman Decl. ¶ 18). This number appears to be the result of a mathematical error.

Codelia, P.C., 2001 WL 30501 at *7; Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999).

    1. Reasonable Hourly Rate

When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by looking to what a reasonable client would be willing to pay. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 183-84. To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed. Id. To determine the reasonable hourly rate applicable, the Court "looks to the district in which the reviewing court sits." Gesualdi v. Dove Mason Supply Co., Inc., No. 19 CV 1181, 2020 WL 1538746, at *6 (E.D.N.Y. March 11, 2020) (citing Scharff v. County of Nassau, No. 10-4208, 2016 WL 3166848, at *4). In Arbor Hill, the Second Circuit adopted the following factors to guide the court's inquiry as to what constitutes a reasonable hourly rate:

> 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the level of skill required to perform the legal service properly; 4) the preclusion of employment by the attorney due to acceptance of the case; 5) the attorney's customary hourly rate; 6) whether the fee is fixed or contingent; 7) the time limitations imposed by the client or the circumstances; 8) the amount involved in the case and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases . . . .

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 187 n.3 (citation omitted). Courts within this Circuit routinely reference these factors when determining fee award. See Manzo v. Sovereign Motor Cars, Ltd., No. 08 CV 1229, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010); Adorno v. Port Auth. of New York & New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Lochren v. County of Suffolk, No. 01 CV 3925, 2008 WL 2039458,

7

at *2 (E.D.N.Y. May 9, 2008); see also Cruz v. Henry Modell & Co., Inc., No. 05 CV 1450, 2008 WL 905351, at *3 (E.D.N.Y. Mar. 31, 2008).

In addition, when determining a fee award, the Second Circuit has instructed courts to balance:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively[,] . . . the timing demands of the case, whether the attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether the attorney might have initially acted pro bono[,] . . . and other returns (such as reputation, etc.) the attorney might expect from the representation

Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d at 184; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007). In awarding attorney's fees, the Court is guided by the fact that default actions are relatively simple legal matters. The Court also considers the attorney's degree of skill and the Court's own experience dealing with similar claims.

Here, the Firm seeks to bill Mr. Bauman's time at a rate of $400 per hour for the work that he performed on this matter between May 17, 2019 through April 17, 2020. (Bauman Decl., Ex. A). According to Mr. Bauman, the Firm is a labor, employment, and employee benefits law firm with approximately 12 attorneys who concentrate in representing clients in labor and management relations and labor, employment, and employee benefits litigation. (Bauman Decl. ¶ 7). Mr. Bauman states that he received his J.D. from Benjamin N. Cardozo School of Law of Yeshiva University in 1990 and an L.L.M. from New York University Law School in 1997. He has 30 years of experience in the labor, employment, and employee benefits field and is admitted to practice in New York, the Southern, Eastern and Northern Districts of New York and the Second Circuit. (Id. ¶ 9). According to Mr. Bauman, his usual billing rate is

8

$400 per hour. (Id. ¶ 10). In Appelbaum v. World Class Business Products Inc., this Court noted that "Attorneys' fees in an ERISA matter were recently awarded in this District at the hourly rate of $400 for partners, $375 for senior associates, $275 for junior associates, and $110 for paralegals." Id. No. 20 CV 4131, 2022 WL 976810, at *8 (E.D.N.Y. Mar. 15, 2022), report and recommendation adopted, No. 20 CV 4131, 2022 WL 970805 (E.D.N.Y. Mar. 31, 2022) (citing Gesualdi v. Scara-Mix, Inc., No. 14 CV 0765, 2017 WL 5564673, at *9 (E.D.N.Y. Nov. 17, 2017). Having reviewed Mr. Bauman's credentials and level of experience and being familiar with the prevailing billing rates in the Eastern District of New York, the Court finds that $400 per hour reasonable rate for an attorney with Mr. Bauman's level of experience.

The plaintiffs also seek reimbursement for the Firm's paralegals' time at the rate of $160 per hour. (Id. ¶ 8, Ex. A). This fee exceeds the upper bounds of what plaintiffs are usually awarded for paralegals' work. Gesualdi v. Burtis Constr. Co., No. 20 CV 4864, 2021 WL 6550952, at *5 (E.D.N.Y. Dec. 28, 2021), report and recommendation adopted, No. 20 CV 4864, 2022 WL 173548 (E.D.N.Y. Jan. 19, 2022) (reducing the hourly rate for paralegal with over 20 years of experience from $120 to $100 per hour); Trustees of the Plumbers Loc. Union No. 1 401(k) Sav. Plan v. Best Plumbing Heating & Cooling Inc., No. 14 CV 6848, 2017 WL 1194459, at *7 (E.D.N.Y. Mar. 3, 2017), report and recommendation adopted, No. 14 CV 6848, 2017 WL 1194731 (E.D.N.Y. Mar. 30, 2017) (reducing the rate for work done by a paralegal form $115 an hour to $100 an hour). Moreover, plaintiffs' counsel has failed to provide any information about the paralegal in question. Thus, the Court cannot determine whether a significant deviation from the maximum amount usually awarded for work done by paralegals is appropriate here. As such, the Court respectfully recommends that the paralegal be awarded a

rate of $110 per hour, consistent with the prevailing rate in this district. Appelbaum v. World Class Bus. Prod. Inc., 2022 WL 976810, at *8.

Therefore, the Court respectfully recommends that the District Court approve Mr. Bauman's rate of $400 per hour and reduce the paralegal's rate from $160 per hour to $110 per hour.

    2.   Reasonable Number of Hours

The next step in awarding attorney's fees is to determine the reasonableness of the hours expended by counsel. See, e.g., Irving v. G. & G. Instrument Corp., 2020 WL 1536325 at *5; LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). In reviewing a fee application, the court should exclude "excessive, redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)); Gesualdi v. Dove Mason Supply Co., Inc., 2020 WL 1538746 at *6. If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012); see also Struthers v. City of New York, No. 12 CV 242, 2013 WL 5407221, at *8-9 (E.D.N.Y. Sept. 25, 2013) (reducing fees because those requested for responding to motion papers were "excessive"). The Court may also reduce requested fees for "vagueness, inconsistencies, and other deficiencies in the billing records." Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998).

The Firm's contemporaneous billing records indicate 15.7 hours of work done by Mr. Bauman and 1.8 hours of work done by the Firm's paralegal in relation to this matter. (Bauman Decl. ¶ 11). However, the Firm's records indicate that plaintiffs' counsel is not seeking to recover fees for 1.7 hours of Mr. Bauman's recorded time, which Mr. Bauman spent traveling.

10

(Id., Ex. A). Thus, plaintiffs seek compensation for only 14 hours of Mr. Bauman's recorded hours and for 1.8 hours of work done by the firm's paralegal, totaling 15.8 hours of work.

Having reviewed the billing records provided, the Court finds that the number of hours billed are reasonable. As such, the Court finds no need to reduce the hours for which plaintiffs seek fees.

Accordingly, the Court respectfully recommends that plaintiffs be awarded $5,600 for the 14 hours of work performed by Mr. Bauman at a rate of $400 per hour and $198 for the 1.8 hours of work performed by the firm's paralegal at a rate of $110 per hour, totaling **$5,798** in attorney's fees.

## CONCLUSION

Considering the foregoing, the Court respectfully recommends that the District Court award plaintiffs damages in the amount of **$145,045.69**, reflecting:

(1) **$47,649.86** in prejudgment interest on the withdrawal liability;

(2) **$91,597.83** in liquidated damages on the withdrawal liability; and

(3) **$5,798** in attorney's fees.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

11

Dated: Brooklyn, New York
       June 2, 2022

                                      /s/ Cheryl L. Pollak
                                      Cheryl L. Pollak
                                      Chief United States Magistrate Judge
                                      Eastern District of New York